## 613.   McCONNELL *v.* THE STATE.

1. "Reputation of a house being kept and maintained as a lewd house is admissible evidence" on the trial of a person charged with said offense.   Such evidence of itself, and wholly uncorroborated, is not sufficient evidence to support a conviction for said offense.
2. There were other facts and circumstances in evidence in this case warranting the jury in concluding that the general reputation of the house for lewdness was in fact its real character; and there being no material error of law, the judgment refusing a new trial is affirmed.

Indictment for keeping lewd house, from Chatham superior court—Judge Cann.   May 28, 1907.

Argued July 18,—Decided August 8, 1907.

*Jacob Gazan, O'Connor, O'Byrne & Hartridge,* for plaintiff in error.   *W. W. Osborne, solicitor-general,* contra.

HILL, C. J.   Lizzie McConnell was convicted of the offense of keeping a lewd house.   Her motion for a new trial was overruled, and she brings the case to this court.   The principal ground of error assigned is that the verdict is without any evidence to support it, and therefore contrary to law.   To determine this question, it is necessary to consider the evidence for the State, which, briefly stated, is as follows:   The defendant was a negro woman living in a house containing nine rooms, mostly bedrooms, located in what might be called the "tenderloin" district of Savannah. Living in the house with her were her son and one negro girl attendant.   It was proved by several police officers in the city that the general reputation of the house was that of an assignation or lewd house, and such had been its general reputation for several years.   A short time prior to the arrest of the defendant for keeping a lewd house, it was shown that she had rented a room in her house to a young white woman who was brought there at midnight in a hack by a white man, and that while this woman

was in the house an abortion was performed upon her, from the effects of which she died. When the officers arrested the defendant, they found in her house a white woman locked in a room up stairs, in a street dress, with her hat off, who gave them a fictitious name and address. The defendant in her statement to the jury admitted that she had rented the house in question for the purpose of keeping it as a lewd house some three or four years before her indictment, but stated that she had not kept it for such unlawful purpose for three or four years; that she had discontinued keeping it since said time for improper purposes, and lived there with her son and his wife and child until the death of the wife and child, and had continued to live there with her son until the present time. She stated that she owned the house and would have sold it, but could not get any price for it; that she made her living in the summer time by selling watermelons, and in the winter time, selling wood from a wood yard, and from operating public hacks. It was also shown by the evidence that white men and white women frequented said house. We will first consider the special assignments of error.

1. The court permitted Murphy, a witness for the State, to testify, over the objection of defendant, that he had, in his capacity as a policeman, visited the residence of the defendant about two months prior to the date of his testimony, while he was investigating "that abortion case," meaning the case in which it was alleged that the young white woman had had a criminal operation performed upon her in the house of the defendant, from the effects of which she had died. It was insisted that this testimony was irrelevant and inadmissible, for the reason that if an abortion had been committed in the house of the defendant, such fact was no proof that she kept and maintained a lewd house, and that the purpose or motive of the witness in visiting the house of the defendant was further irrelevant as not being in line with the alleged purpose for which the defendant kept and maintained the house, and that such testimony tended to confuse the minds of the jury, and mislead and prejudice them against the defendant. The court, in admitting this testimony, instructed the jury that they were not to consider the evidence in reference to any alleged abortion. We think the fact that a young white woman, presumptively of immoral character, had been an inmate of said house, was a cir-

cumstance, its weight to be determined by the jury, illustrating the character of the house.

2. It is insisted that the court erred in permitting this same witness to testify for the State, over the objection of the defendant, that defendant had stated to him that she had rented a room in her house to a white woman about two weeks prior to the visit of the police officer, it being urged that this testimony was irrelevant, unless the State could show also that the reputation of the woman to whom the room was rented was that of unchastity, or that the purpose of renting the room to her was for prostitution, or that the woman committed an act of prostitution in the house; it being contended that the mere renting of the room in the house to the woman, without proof of more, was not competent evidence on the charge of keeping and maintaining a lewd house. This admission of the defendant was relevant testimony in connection with the circumstances, that the woman in question was a white woman who had been brought to the house at midnight by a white man who was not her husband or related to her, and that while in the house this woman had performed upon her an abortion.

3. It was said that the court erred in permitting a police officer as a witness for the State to testify, over the objection of defendant that the woman to whom the room had been rented, and upon whom the criminal abortion had been committed, was not then in life, it being insisted that this testimony was calculated to mislead the jury, and to prejudice their minds against the defendant. The court, in admitting the testimony, stated to the jury that he did so for the sole purpose of explaining why the State did not produce her as a witness, it having already been shown by the testimony that defendant had rented this white woman a room in the house. The further fact that the woman was dead could not have been hurtful to the defendant.

4. Counsel for the defendant offered to prove by two of the State's witnesses that when they went to the defendant's house to make the arrest, they found a white woman in a bedroom upstairs, who stated to them the purpose of her visit to said house, and the reason for her presence therein; she stating then and there to these officers that she had entered the house for the purpose of finding a dressmaker, thinking that a dressmaker was located therein, and that, seeing the officers coming in, she had become

frightened and fled up stairs; that she was a respectable lady,. and was not in said house for the purpose of lewdness. In view of the fact that in the same conversation this woman had given. to the officers a name and address which was found to be ficti- tious, which facts were allowed to be shown in behalf of the State,. we think all of this conversation should have been admitted to· the jury.· We do not think, however, that the refusal to admit it· was such harmful error as to demand a new trial.

5. But the main point relied upon by counsel for plaintiff in. error, and presented to this court with much force, is that there was no legal evidence submitted to the jury upon which a verdict· of guilty of the crime charged could have been based. It is urged. that·there is not in the testimony of any witness a single fact based upon his own knowledge, to prove the offense charged, to-- wit, that of maintaining and keeping a lewd house. It is insisted that the testimony given by the police officers, that the defendant. maintained and kept a house having the reputation of being a lewd house, furnishes no evidence to support a conviction, and was inadmissible. The Supreme Court, in *Hogan* v. *State,* 76 *Ga.* 82, held that the reputation of a house,being kept and maintained as a lewd house was admissible evidence on the trial of a person charged with keeping and maintaining a lewd house. It is in- sisted by learned counsel that this ruling is unsound and contrary to decisions of many courts of last resort on the same subject; and we are asked to certify this question to the Supreme Court for the purpose of having this decision reviewed. It is said that this evidence is. admissible only where the statute makes it an offense · to keep and maintain a house of ill-fame. We think the word "ill-fame" is used in these statutes as synonymous with the word "lewd," both meaning a house kept for the purpose of permitting the practice of fornication and adultery therein. We can not think that it was intended to create a substantive offense in keeping a house which, justly or unjustly, had the reputation of being a. house of ill-fame. The offense must be the keeping of a house which was in fact, and not merely in name, a house for the prac- tice of immorality. But we do not think it necessary to extend this discussion. We do not think the Supreme Court, in the de- cision supra, intended to hold that general reputation of a house of itself alone and uncorroborated was sufficient evidence to prove

the offense, but that it was admissible as a circumstance tending to prove the fact, and, in connection with other facts and circumstances, might be sufficient to prove the existence of the offense. Construing the decision with this limitation, we see no reason to doubt its soundness, or to certify the question to the Supreme Court for review.

Without going into a consideration of the evidence, we content ourselves with the statement that there were other facts and circumstances proved, along with the general reputation of the house, which warranted the verdict of the jury. ⸗ What might be called the general complexion of the place had the appearance of lewdness, and there were several leprous spots in this complexion which strongly pointed to the existence of immorality. This court can not say that there was no evidence to support the verdict, or that the trial court abused its discretion in refusing to grant a new trial.                    *Judgment affirmed.*